# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| SHAWN MILNER, | : | |
|     Plaintiff, | : | No. 3:17-cv-1341 (SRU) |
| | : | |
| v. | : | |
| | : | |
| WILLIAM MULLIGAN, | : | |
|     Defendant. | : | |

# INITIAL REVIEW ORDER

Shawn Milner ("Milner"), currently confined at Northern Correctional Institution in Somers, Connecticut, filed an amended complaint *pro se* under 42 U.S.C. § 1983 alleging that he was denied adequate medical care. The named defendants are Northern Correctional Institution ("Northern"), William Mulligan ("Mulligan"), Captain Jason Cahill ("Cahill"), Lieutenant David Josefiak ("Josefiak"), Lieutenant Sean Guimond ("Guimond"), Officer Alex Collins ("Collins"), Officer Bogan ("Bogan"), Officer Sanchez ("Sanchez"), Nurse Kristen Carabine ("Carabine"), the City of Somers and Tolland County.

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I.   <u>Allegations</u>

Milner is a pretrial detainee. He suffers from a seizure disorder. Milner was housed in the first phase of the administrative segregation program at Northern at the time of the incident. Although all other inmates in that phase of the administrative segregation program are single-celled, Milner was provided a cellmate because of his seizure disorder.

On July 21, 2016, at 9:40 a.m., Milner began experiencing a metallic taste, dizziness and blurred vision. All three symptoms are preliminary indicators of a seizure. Milner pressed the emergency call button in his cell to obtain medical assistance. Milner told Bogan, the main control officer, about the seizure indicators. Approximately five minutes later, Milner's cellmate again pressed the emergency call button. The second call was ignored.

Milner tried to abate the symptoms by splashing water on his face. Milner's cellmate asked other inmates to press the emergency call button in their cells because Bogan did not respond to the cellmate's attempts to get medical assistance for Milner. These calls were ignored.

At 9:49 a.m., property officer Melendez entered the tier. Milner's cellmate yelled that Milner had fallen and nearly hit his head on the bunk. Officer Melendez went to the cell and saw

2

Milner on the floor experiencing a seizure. Defendants Bogan, Collins and Sanchez did not tour the unit at any time while Milner was experiencing a seizure. Department of Correction policy requires that unit tours be conducted every fifteen minutes.

Officer Melendez called a code white, a medical emergency code. Although she was aware of Milner's condition, Carabine casually walked into the unit in response to the code. She did not run as she should have in response to a medical emergency code.

At approximately 10:30 a.m., Josefiak and Guimond came to the housing unit to conduct an informal investigation. They questioned Milner's cellmate regarding the incident. Josefiak and Guimond ignored the cellmate's statements and prepared reports to cover up the lack of unit tours and failure to respond to emergency calls. Despite the lack of confirmation in the medical records, Mulligan approved the report entry that Bogan had contacted the medical unit three minutes before the code was called. Cahill, the shift captain, participated in the cover-up by stating that all policies were followed.

During the seizure, Milner's head repeatedly hit the floor, causing a laceration near his eye. Milner was sent to an outside hospital for treatment.

II.  Analysis

In his original complaint, Milner states that he was only bringing an Eighth Amendment claim for deliberate indifference to serious medical needs. In the introduction to the amended complaint, he seeks to add Americans with Disabilities Act and equal protection claims. Milner lists five causes of action in the amended complaint: deliberate indifference to a serious medical need, failure to protect, failure to supervise, falsely reporting the incident, and ADA violations.

    A.    Northern Correctional Institution

Milner includes Northern as a defendant. The Department of Correction, a state agency, is not a person within the meaning of section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Angileri v. Wu*, 2016 WL 3579073, at *3 (D. Conn. June 28, 2016) (as a state agency, Department of Correction is not a person within the meaning of section 1983). As a unit of the Department of Correction, Northern also is not a person within the meaning of section 1983. *See Santos v. Connecticut Dep't of Corr.*, 2005 WL 2123543, at *3 (D. Conn. Aug, 19, 2005) (observing that "neither a Department of Correction nor a correctional institution is a 'person'" subject to liability under section 1983). Accordingly, all section 1983 claims against Northern are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

B. Town of Somers and Tolland County

Milner names the Town of Somers and Tolland County as defendants because Northern is located in that town and county. He states in his description of parties that those towns are responsible for ensuring that Northern is ADA-compliant. Milner provides no authority for his assumption that the municipality or county has authority to direct the actions of state officials in a state correctional facility and research reveals none. Further, I determine below that Milner fails to state a cognizable ADA claim, because there is no factual basis for this claim. All claims against the Town of Somers and Tolland County are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

C. ADA

The purpose of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The statute provides that "no qualified

individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. The statute is intended "to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998).

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2)(A). When analyzing claims, "courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities." *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 852 (2d Cir. 2013) (citation and quotation marks omitted). Milner provides no information regarding the limitations caused by his seizures. For purposes of this ruling only, I will assume that Milner suffers from a qualifying disability.

Milner alleges that he was denied medical services because of his disability. He alleges that emergency medical call buttons are a service afforded to all other inmates but denied to him. Milner was not denied an emergency call button. He alleges that there was a working emergency call button in his cell.

Milner claims that Bogan did not call the medical unit for assistance after receiving Milner's emergency call. The failure to attend to the medical needs of an inmate, even where the inmate is disabled, is not an ADA violation. *Tardif v. City of New York*, 2017 WL 1079979, at *4 (S.D.N.Y. Mar. 22, 2017). The courts "routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d

5

590, 595 (S.D.N.Y. 2010); *see Lincoln CERCPAC v. Health & Hosp. Corp.*, 147 F.3d 165, 168 (2d Cir. 1988) ("[T]he disabilities statutes do not guarantee any particular level of medical care for disabled persons, nor assure maintenance of services previously provided."). Such claims are considered under the Eighth Amendment. *See Elbert*, 751 F. Supp. 2d at 595. Milner alleges that Bogan ignored his emergency request. Milner does not allege that he was ignored because he has a seizure disorder or that Bogan was more attentive to emergency calls from other inmates. Accordingly, Milner's ADA claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

  D. <u>Deliberate Indifference to Serious Medical Needs</u>

Milner alleges three examples of deliberate indifferent to his medical needs: (1) Bogan failed to contact the medical unit when Milner used the emergency call button; (2) Carabine casually walked into the housing unit even though she was aware of Milner's seizure disorder; and (3) Sanchez, Collins and Bogan failed to conduct required periodic tours of the housing unit.

"The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks omitted). To establish a claim for deliberate indifference to a serious medical need, Milner must allege facts demonstrating two elements. The first element is objective; "the alleged deprivation of adequate medical care must be sufficiently serious." *Id.* (internal quotation marks omitted). Under this objective element, a court must determine first, "whether the prisoner was actually deprived of adequate medical care," and second, "whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). Adequate medical care is reasonable care such that "prison officials who act reasonably cannot be found liable." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). Milner also

6

must allege facts showing that his medical needs, "either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has presented "a non-exhaustive list" of factors to consider: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

A delay in providing needed medical care can, under some circumstances, constitute deliberate indifference. The Second Circuit has held that a delay in treatment meets the 8th Amendment standard where prison officials ignored a 'life-threatening and fast-degenerating condition for three days…or delayed needed major surgery for more than two years….'" *Swinton v. Wright*, 2017 WL 3880314, at *4 (D. Conn. Sept. 7, 2017) (quoting *Demata v. New York State Corr. Dep't of Health Servs.*, 1999 WL 753142, at *2 (2d Cir. Sept. 17, 2017).

The second element of the deliberate indifference test is subjective; the defendants must have actually been aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *See Salahuddin*, 467 F.3d at 279-80. Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See id.* Nor does a difference of opinion regarding what constitutes an appropriate response and treatment constitute deliberate indifference. *See Ventura v. Sinha*, 379 F. App'x 1, 2-3 (2d Cir. 2010).

7

I have determined that, for purposes of initial screening, Milner's seizure disorder constitutes a serious medical need. *See Milner v. Black*, 2016 WL 7104247, at *3 (D. Conn. Dec. 5, 2016). Thus, I consider whether Milner's allegations plausibly satisfy the subjective element of the deliberate indifference test.

Milner alleges that he told Bogan that he was experiencing preliminary symptoms of a seizure but Bogan took no action and ignored all follow-up requests for help. He also alleges that Carabine understood that Milner suffered a seizure disorder but casually walked to the unit in response to the medical emergency code disregarding the possibility of serious harm. I conclude that that those allegations are sufficient at this time to state plausible deliberate indifference claims against Bogan and Carabine.

Milner also alleges that Bogan, Collins and Sanchez were deliberately indifferent in their failure to conduct the required unit tours. Milner assumes that if the tours were conducted every fifteen minutes, as required, Collins and Sanchez would have seen him experiencing the seizure and summoned medical assistance sooner. He alleges, however, that only nine minutes elapsed between the time he experienced pre-seizure symptoms and the time Officer Melendez issued the medical code. It is not clear that Collins and Sanchez would have observed the seizure during this nine minute period. In addition, Milner had the emergency call button in his cell. Thus, he was not dependent on correctional officers touring the unit to obtain medical care. It is not clear that Collins and Sanchez understood that there was a substantial risk that Milner would suffer serious harm if they did not tour the unit exactly as required. The claim against Collins and Sanchez appears to be a negligence claim, which is not cognizable under section 1983. The claim against Collins and Sanchez is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

E.      Failure to Protect

Milner alleges that the defendants failed to protect him from harm by failing to ensure that he received proper medical care. This claim is a restatement of the deliberate indifference to medical needs claim addressed above. Any separate failure to protect claim is dismissed.

F.      Failure to Supervise

Milner alleges that Mulligan failed to supervise or discipline the other defendants. To state a claim for supervisory liability, Milner must demonstrate one or more of the following criteria: (1) the defendants actually and directly participated in the alleged action, (2) the defendants failed to remedy a wrong after being informed of the wrong through a report or appeal, (3) the defendants created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or permitted such a policy or custom to continue, (4) the defendants were grossly negligent in their supervision of the officers who committed the constitutional violation, or (5) the defendants were deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring. *See Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003). Milner also must demonstrate a causal link between the actions of the supervisory official and his injuries. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

Milner's claim would fall within the fourth category. To state a plausible claim, however, Milner must do more than allege that Mulligan has supervisory authority. *See Styles v. Goord*, 431 F. App'x 31, 33 (2d Cir. 2011) ("The mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under section 1983."). Milner does not allege facts regarding the level of daily supervision the warden

exercises over correctional staff. The conclusory allegation is insufficient to state a plausible claim for supervisory liability.

      G.      <u>False Reporting</u>

Milner alleges that Mulligan, Cahill, Josefiak and Guimond falsified their reports to cover up officer misconduct. He states that their actions violate 18 U.S.C. §1001.

Section 1001 provides sanctions, including imprisonment, for making false statements or knowingly using documents containing false statements in matters within the jurisdiction of the federal government. However, violation of a criminal statute will not serve as the basis for a civil remedy unless the specific statute includes an express or implied right of action. *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979). Section 1001 contains no such language. Thus, any false reporting claims are dismissed. *See Faraldo v. Kessler*, 2008 WL 216608, at *6 (E.D.N.Y. Jan. 23, 2008) (citing cases holding no private right of action under section 1001).

Milner alleges that the false statements violate Department of Correction policies and procedures. The failure to comply with department policies or procedures, standing alone, is not a constitutional violation. An inmate, however, retains the right to have the district court review his underlying section 1983 claim. *See Rhodes v. Hoy*, 2007 WL 1343649, at *2 (N.D.N.Y. May 5, 2007) (due process not violated by failure to comply with institutional grievance procedures, but noting that inmate had right to federal review of claim that institutional process did not adequately redress wrong). Thus, Milner has no cognizable federal claim based only on the allegedly false statements. Finally, I note that the allegedly false statements were made in connection with the investigation into the incident. Milner, however, has no constitutional right to have his claim investigated. *See Nieves v. Gonzalez*, 2006 WL 758615, at *4 (W.D.N.Y. Mar.

2, 2006) ("courts within the Second Circuit have determined that '[t]here is … no constitutional right to an investigation by government officials'") (citation omitted).

      H.      <u>Equal Protection</u>

Milner alleges that the actions of the defendants in denying him prompt medical care, failing to supervise subordinates and falsely reporting the incident denied him equal protection of the laws.

To state an equal protection claim, Milner must allege facts showing that he was treated differently from similarly situated individuals and that the reason for the different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). Milner does not identify any similarly situated individuals who were treated differently.

Milner also could assert an equal protection claim based on a "class of one" theory. To state a valid claim, Milner must allege first that he was intentionally treated differently from others who are similarly situated. Second, he must allege facts showing that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). He must allege an "extremely high" level of similarity with the person to whom he is comparing himself; their circumstances must be "prima facie identical." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled in part on other grounds by Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008). Again, Milner identifies no similarly situated persons. Thus, any equal protection claim fails.

11

I.      Declaratory and Injunctive Relief

Milner seeks declaratory relief in the form of a statement that the defendants have violated his "14th, 8th, 5th [Amendment], and Disability Rights." ECF No. 13 at 15. He also seeks injunctive relief mandating new emergency response policies.

Declaratory relief is intended to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Colabella v. American Inst. of Certified Public Accountants*, 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citation omitted). Declaratory relief operates prospectively to "enable parties to adjudicate disputes before either side suffers great damage". *See In re Combustion Equip. Assocs., Inc.*, 838 F.2d 35, 37 (2d Cir. 1988). Here, the complaint concerns only past actions. Milner does not identify any legal relationship or issues that require resolution via declaratory relief. His request would merely be a restatement that he prevailed on his underlying claims. That is not the proper use of declaratory relief. *See Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006) (concluding that claim for declaratory relief that is duplicative of adjudicative claim underlying action serves no purpose). Accordingly, Milner's request for declaratory relief is dismissed.

Injunctive relief becomes moot once an inmate is transferred to a different correctional facility. *See Salahuddin*, 467 F.3d at 272 (2d Cir. 2011) ("In this circuit, an inmate's transfer from a prison generally moots claims for declaratory and injunctive relief."). This case concerns one incident occurring at Northern in July 2016. Before he even filed this action, Milner had been transferred to a different correctional facility. Thus, any injunctive relief addressing procedures at Northern would have no effect on Milner's current confinement. The request for

injunctive relief also is dismissed.

## CONCLUSION

The following claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1): all ADA claims; all claims against Northern, the Town of Somers and Tolland County; the deliberate indifference to serious medical needs claim against Collins and Sanchez, the false reporting claims, the failure to supervise claim, the equal protection claims and the requests for declaratory and injunctive relief. The failure to protect claim is **DISMISSED** because it merely restates the deliberate indifference claim. The case will proceed on the deliberate indifference claims for damages against Bogan and Carabine.

In accordance with the foregoing analysis, the Court enters the following orders:

(1) **The Clerk shall** verify the current work address for each defendant, Bogan and Carabine, with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packets containing the amended complaint to the defendants within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** send plaintiff a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the amended complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the amended complaint, either an

answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to merely put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10) Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the court.

**SO ORDERED** at Bridgeport, Connecticut, this 17th day of October 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge